THE STATE OF OHIO, APPELLEE, *v*. WILLIAMS, APPELLANT.

[Cite as *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374.]

*Criminal law — Sex-offender registration — 2007 Am.Sub.S.B. No. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws.*

(No. 2009-0088 — Submitted March 1, 2011 — Decided July 13, 2011.)

APPEAL from the Court of Appeals for Warren County,

No. CA2008-02-029, 2008-Ohio-6195.

_____

SYLLABUS OF THE COURT

2007 Am.Sub.S.B. No. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws.

_____

PFEIFER, J.

**Factual and Procedural Background**

{¶ 1} In November 2007, appellant, George Williams, was indicted for unlawful sexual contact with a minor, a felony of the fourth degree under R.C. 2907.04. The indictment stated that Williams, "being eighteen years of age or older, did engage in sexual conduct with another, not the spouse of the offender, when the offender knows such other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." Williams pleaded guilty in open court. During the plea colloquy, the trial court twice stated that Williams's conviction would not subject him to reporting requirements.

**{¶ 2}** Williams subsequently moved to be sentenced under the version of R.C. Chapter 2950 in effect at the time that he committed the offense. He argued that major changes to R.C. Chapter 2950 took effect on January 1, 2008, and that "[t]he sentencing law and reporting law that should apply to the Defendant is the law that was in effect at the time of the criminal conduct and at the time of the plea." The state opposed the motion, arguing that Williams could not point to any basis for his motion or any justification for the trial court to ignore the law, because none existed. The trial court denied the motion.

**{¶ 3}** At his sentencing hearing, Williams was informed that he would be designated a Tier II sex offender under the current version of R.C. Chapter 2950, 2007 Am.Sub.S.B. No. 10 ("S.B. 10"). The judge ordered Williams to register in person in the county in which he resided, in the county in which he was being educated, and in the county in which he was employed, to "provide written notice within three days of any change of vehicle information, e-mail addresses, Internet identifiers or telephone numbers," and to verify the addresses "for a period of 25 years with in person verification every 180 days." See R.C. 2950.04, 2950.05, 2950.06(B)(2), and 2950.07(B)(2).

**{¶ 4}** On appeal, Williams argued that the provisions of S.B. 10 cannot constitutionally be applied to a defendant whose offense occurred before July 1, 2007. The court of appeals disagreed and affirmed the decision of the trial court, concluding that "the classification and registration provisions of Senate Bill 10 do not violate the Ohio Constitution's ban on retroactive laws." *State v. Williams*, 12th Dist. No. CA2008-02-029, 2008-Ohio-6195, ¶ 112.

**{¶ 5}** We accepted Williams's discretionary appeal. *State v. Williams,* 121 Ohio St.3d 1449, 2009-Ohio-1820, 904 N.E.2d 900.

## Analysis

*S.B. 10*

**{¶ 6}** S.B. 10 is one step of an evolution in the treatment of convicted sex offenders in the state of Ohio. See *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 3-28. Because the issue before us is narrow, it is not necessary to again discuss that history.

**{¶ 7}** The statutory scheme for the classification and registration of sex offenders in effect at the time Williams committed the offense and when he entered his plea, Ohio's version of the federal Megan's Law, Section 14071, Title 42, U.S.Code, was enacted in 1996, Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, and was significantly amended in 2003 by Am.Sub.S.B. No. 5 ("S.B. 5"), 150 Ohio Laws, Part IV, 6558. The current statutory scheme, S.B. 10, was enacted in 2007, and is based on the federal Adam Walsh Act, Section 16901 et seq., Title 42, U.S.Code. The classification scheme for sex offenders changed under S.B. 10: an offender is now subject to additional reporting and registration requirements and is subject to those requirements for a longer time. See *Bodyke* at ¶ 24-28. The issue before us is whether these changes, when applied to a person whose crime was committed prior to the enactment of S.B. 10, violate the prohibition against ex post facto laws contained in Section 10, Article I of the United States Constitution or the prohibition against retroactive laws contained in Section 28, Article II of the Ohio Constitution. Because we conclude that S.B. 10 violates the Ohio Constitution, we need not discuss whether S.B. 10 also violates the United States Constitution.

*Prohibition against retroactive laws*

**{¶ 8}** Section 28, Article II of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." When analyzing whether a statute is unconstitutionally retroactive, we use a two-part test. *Hyle v. Porter,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 7-9. In the first part of the test, we "ask whether the General Assembly expressly made the statute retroactive." Id. at ¶ 8. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36

Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus ("The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply").   R.C. 2950.03, for example, imposes registration requirements for offenders sentenced on or after January 1, 2008, regardless of when the offense was committed.  Because this portion of S.B. 10 was intended to apply retroactively, we now turn to the second part of the test, which requires us to determine whether the statutory provisions are substantive or remedial.  *Hyle* at ¶ 8.  See also *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10.

{¶ 9}   In *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 37, we stated that "[i]t is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right.  *Van Fossen,* 36 Ohio St.3d at 107, 522 N.E.2d 489.   Remedial laws, however, are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right."  See *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352-353, 721 N.E.2d 28, quoting *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749 ("The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]' " [bracketed material sic]).

### S.B. 5 v. S.B. 10 and remedial v. punitive

{¶ 10} This court has consistently held that "R.C. Chapter 2950 is a remedial statute."  *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 29.  We have also stated, "There is no absolute test to determine whether a retroactive statute is so punitive as to violate the constitutional

prohibition against *ex post facto* laws; such a determination is a 'matter of degree.' " *State v. Cook* (1998), 83 Ohio St.3d 404, 418, 700 N.E.2d 570. In *Cook*, we examined the guideposts listed in *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644, for determining whether a statute is punitive and concluded that "R.C. Chapter 2950 serves the solely remedial purpose of protecting the public." *Cook* at 423.

**{¶ 11}** After *Cook* was issued, R.C. Chapter 2950 was amended by S.B. 5. This court again concluded that despite the changes effected by S.B. 5, R.C. Chapter 2950 was a remedial statute. *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 43. Some factors pertaining to the statutory scheme governing sex offenders, however, suggested that the statutory scheme was punitive. First, the procedures for registration and classification of sex offenders were placed within Ohio's criminal code, R.C. Title 29. Second, failure to comply with certain registration requirements subjected a sex offender to criminal prosecution. R.C. 2950.99.

**{¶ 12}** In a dissent in *Ferguson*, Justice Lanzinger wrote as follows:

**{¶ 13}** "Although the majority continues to rely on *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, the first case that considered retroactive application of R.C. 2950.09(B), R.C. Chapter 2950 has been amended. The simple registration process and notification procedures are now different from those considered in *Cook* and in *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342. R.C. Chapter 2950 has been transformed from remedial to punitive as I have previously argued:

**{¶ 14}** " 'The following comparisons show that the current laws are more complicated and restrictive than those at issue in *Williams* and *Cook*. First, the label "sexual predator" is now permanent for adult offenders, R.C. 2950.07(B)(1), whereas previously, offenders had the possibility of having it removed. Former R.C. 2950.09(D), Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2621-

2623. Second, registration duties are now more demanding and therefore are no longer comparable to the inconvenience of renewing a driver's license, as *Cook* had analogized. *Cook,* 83 Ohio St.3d at 418, 700 N.E.2d 570. Persons classified as sex offenders must now personally register with the sheriff of the county in which they reside, work, and go to school. R.C. 2950.04(A). Sexual predators must personally register with potentially three different sheriffs every 90 days, R.C. 2950.06(B)(1)(a), which is hardly comparable to the slight inconvenience of having one's driver's license renewed every four years. Third, community notification has expanded to the extent that any statements, information, photographs, or fingerprints that an offender is required to provide are public record and much of that material is now included in the sex-offender database maintained on the Internet by the attorney general. R.C. 2950.081. In *Cook,* we considered it significant that the information provided to sheriffs by sex offenders could be disseminated to only a restricted group of people. *Cook,* 83 Ohio St.3d at 422, 700 N.E.2d 570. Fourth, new restrictions have been added to R.C. Chapter 2950. Enacted initially as part of Sub.S.B. No. 5, 125th General Assembly, approved July 31, 2003, R.C. 2950.031 prohibits all classified sex offenders, not just those convicted of sex offenses against children, from residing within 1,000 feet of any school premises. And fifth, a sheriff is now permitted to request that the sex offender's landlord or the manager of the sex offender's residence verify that the sex offender currently resides at the registered address. R.C. 2950.111(A)(1). According to R.C. 2950.111(C), "[a] sheriff or designee of a sheriff is not limited in the number of requests that may be made under this section regarding any registration, provision of notice, or verification, or in the number of times that the sheriff or designee may attempt to confirm, in manners other than the manner provided in this section, that an offender * * * currently resides at the address in question."

{¶ 15} " 'While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations are imposed upon those classified as sex offenders. All sexual predators and most habitual sex offenders are expected, for the remainder of their lives, to register their residences and their employment with local sheriffs. Moreover, this information will be accessible to all. The stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment, as the *Cook* court recognized. Id., 83 Ohio St.3d at 418, 700 N.E.2d 570. Therefore, I do not believe that we can continue to label these proceedings as civil in nature. These restraints on liberty are the consequences of specific criminal convictions and should be recognized as part of the punishment that is imposed as a result of the offender's actions.' *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 45-46 (Lanzinger, J., concurring in part and dissenting in part)." Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 45-47 (Lanzinger, J., dissenting).

{¶ 16} Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive. The statutory scheme has changed dramatically since this court described the registration process imposed on sex offenders as an inconvenience "comparable to renewing a driver's license." *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570. And it has changed markedly since this court concluded in *Ferguson* that R.C. Chapter 2950 was remedial.

{¶ 17} Under the statutory scheme in effect at the time Williams committed the offense, he was entitled to a hearing at which a court would determine whether he should be classified as a sexual predator, a habitual sex offender or a habitual child-victim offender, or a sexually oriented offender. The court would have considered various statutory factors in making its determination. Former R.C. 2950.09(B)(3), Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6558, 6689-6690. Under S.B. 10, Williams is classified as a Tier II sex offender based

solely on the offense he committed, without regard to the circumstances of the crime or his likelihood to reoffend. R.C. 2950.01(E), (F), and (G).

{¶ 18} Under S.B. 5, Williams might not have been subject to registration requirements. The trial court twice informed Williams that he would not be required to register as a sex offender. Under S.B. 10, based on his classification as a Tier II sex offender, Williams is automatically subject to registration requirements that obligate him to register in person in the county where he resides, in the county where he works, and in the county where he attends school. R.C. 2950.04(A)(2).

{¶ 19} Under S.B. 5, Williams could have been required to register as a sex offender for a period of ten years. Former R.C. 2950.07(B)(3), 150 Ohio Laws, Part IV, at 6681-6683. Based upon comments made by the judge when Williams entered his plea, he likely would not have been required to register. Under S.B. 10, Williams is required to register as a sex offender for 25 years. R.C. 2950.07(B)(2).

{¶ 20} Sex offenders are no longer allowed to challenge their classifications as sex offenders because classification is automatic depending on the offense. Judges no longer review the sex-offender classification. In general, sex offenders are required to register more often and for a longer period of time. They are required to register in person and in several different places. R.C. 2950.06(B) and 2950.07(B). Furthermore, all the registration requirements apply without regard to the future dangerousness of the sex offender. Instead, registration requirements and other requirements are based solely on the fact of a conviction. Based on these significant changes to the statutory scheme governing sex offenders, we are no longer convinced that R.C. Chapter 2950 is remedial, even though some elements of it remain remedial. We conclude that as to a sex offender whose crime was committed prior to the enactment of S.B. 10, the act "imposes new or additional burdens, duties, obligations, or liabilities as to a past

transaction," *Pratte*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, at ¶ 37, and "create[s] new burdens, new duties, new obligations, or new liabilities not existing at the time," *Miller*, 64 Ohio St. at 51, 59 N.E. 749.

{¶ 21} No one change compels our conclusion that S.B. 10 is punitive. It is a matter of degree whether a statute is so punitive that its retroactive application is unconstitutional. *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570. When we consider all the changes enacted by S.B. 10 in aggregate, we conclude that imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive. Accordingly, we conclude that S.B. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws.

### Conclusion

{¶ 22} The General Assembly has the authority, indeed the obligation, to protect the public from sex offenders. It may not, however, consistent with the Ohio Constitution, "impose[] new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Pratte*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, at ¶ 37. If the registration requirements of S.B. 10 are imposed on Williams, the General Assembly has imposed new or additional burdens, duties, obligations, or liabilities as to a past transaction. We conclude that S.B. 10, as applied to Williams and any other sex offender who committed an offense prior to the enactment of S.B. 10, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from enacting retroactive laws.

{¶ 23} We reverse the judgment of the court of appeals and remand the cause for resentencing under the law in effect at the time Williams committed the offense.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, and MCGEE BROWN, JJ., concur.

O'DONNELL and CUPP, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 24} I respectfully dissent. Consistent with prior holdings of this court in *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, and *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, the registration and notification requirements of 2007 Am.Sub.S.B. No. 10 ("S.B. 10") are civil in nature and do not violate the Retroactivity Clause of the Ohio Constitution. And every federal circuit court that has considered similar federal sex-offender registration and notification requirements has held that they may be retroactively applied. For these reasons, I would affirm the judgment of the appellate court.

{¶ 25} The Ohio General Assembly has adopted legislation in accordance with legislation enacted by the United States Congress in an effort to create a national, uniform system of sex-offender registration. Our long-standing precedent recognizes the legislature's authority to make policy decisions for reasons of public safety and public welfare. Moreover, having considered the constitutionality of prior sex-offender-registration statutes, this court has consistently held both that those statutes constitute a civil regulatory scheme designed to protect the public from known sex offenders and that the statutes may be retroactively applied to individuals who have committed sexually oriented offenses in the past.

{¶ 26} In my view, S.B. 10 does not substantially depart from prior statutory enactments upheld by this court, and today's majority decision that it violates the Retroactivity Clause is not only out of sync with our prior precedent,

10

but also with precedent in every federal circuit court of appeals that has addressed similar sex-offender-registration requirements.

### Sex-Offender Registration

{¶ 27} The question whether S.B. 10 violates the Retroactivity Clause requires a review of the prior sex-offender-registration statutes, Am.Sub.H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2560, subsequently amended by Am.Sub.S.B. No. 5 ("S.B. 5"), 150 Ohio Laws, Part IV, 6558, and our decisions interpreting those statutes.

*Megan's Law*

{¶ 28} In 1996, the General Assembly enacted H.B. 180, better known as "Megan's Law." That act revised R.C. Chapter 2950 and established a comprehensive system of sex-offender classification and registration. The legislature expressed its intent that the act apply retroactively, regardless of when the underlying sex offense had been committed, former R.C. 2950.04(A), 146 Ohio Laws, Part II, at 2609-2610, and provided criminal penalties for offenders who failed to comply with its registration requirements. Former R.C. 2950.99, 146 Ohio Laws, Part II, at 2634-2635.

{¶ 29} Megan's Law divided sex offenders into three categories – sexually oriented offenders, habitual sex offenders, and sexual predators. See former R.C. 2950.04(A) and 2950.09(A) and (E), 146 Ohio Laws, Part II, at 2609, 2618, 2623-2624. Former R.C. 2950.04(A), 2950.06(B)(2), 146 Ohio Laws, Part II, at 2613, and 2950.07(B)(3), 146 Ohio Laws, Part II, at 2617, provided that anyone convicted of a sexually oriented offense be classified as a sexually oriented offender and be subject to annual reporting requirements for a period of ten years. If upon a conviction for a sexually oriented offense after the effective date of the statute a judge determined that the offender had a previous conviction for a sexually oriented offense, former R.C. 2950.09(E), 146 Ohio Laws, Part II, at 2623-2624, required the court to adjudicate the offender a habitual sex

offender, thereby subjecting the offender to annual reporting for 20 years pursuant to former R.C. 2950.06(B)(2) and 2950.07(B)(2), 146 Ohio Laws, Part II, at 2613, 2617.

{¶ 30} The General Assembly reserved the most stringent reporting requirements for offenders who had either been convicted of a sexual-predator specification or adjudicated by a court to be a sexual predator. In order to adjudicate an offender as a sexual predator, the trial court had to conduct a hearing to consider the offender's likelihood of reoffending, at which the offender had the right to counsel, to testify on his own behalf, and to cross-examine witnesses. Former R.C. 2950.01(E) and 2950.09(B), 146 Ohio Laws, Part II, at 2602, 2618-2619. Megan's Law required sexual predators to report every 90 days for life, former R.C. 2950.06(B)(1) and 2950.07(B)(2), 146 Ohio Laws, Part II, at 2613, 2617, unless the court removed that classification pursuant to former R.C. 2950.09(D), 146 Ohio Laws, Part II, at 2621-2623.

{¶ 31} Megan's Law required all sex offenders to register with the sheriff in the county in which they resided or were temporarily domiciled for more than seven days. Former R.C. 2950.04(A), 146 Ohio Laws, Part II, at 2609. It required sex offenders to provide a current residence address, the name and address of any employer, any other information required by the bureau of criminal identification and investigation, and a photograph. Former R.C. 2950.04(C), 146 Ohio Laws, Part II, at 2610. Additionally, the law required sexual predators and habitual sex offenders to provide the license plate number of each motor vehicle owned and/or registered in the offender's name. Id.

*Constitutional Challenges to Megan's Law*

{¶ 32} We have considered several challenges to the constitutionality of Megan's Law involving retroactivity, ex post facto, and due-process concerns, and in each case, our analysis addressed whether the requirements the law enacted were punitive or civil in nature.

**{¶ 33}** In *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, we considered the constitutionality of Megan's Law as applied to offenders who had committed sexually oriented offenses before the effective date of the statute. We held that the law did not violate Section 28, Article II of the Ohio Constitution, the Retroactivity Clause, because the registration requirements provided in the act were necessary to achieve the legislature's remedial purpose of protecting the public from sexual offenders. Id. at 412. Although we recognized that Megan's Law increased the frequency and duration of reporting beyond that required by prior law, id. at 411, we determined that these provisions only "us[ed] past events to establish current status" and constituted "*de minimis* procedural requirements" necessary to achieve the purpose of the act, id. at 412.

**{¶ 34}** Additionally, in *Cook*, we rejected an ex post facto challenge to Megan's Law, explaining that the statute did not contain any language expressing an intent to punish sex offenders for prior conduct, id. at 417. Nor could it be considered punitive in practical effect, id. at 423. Rather, the statutory scheme furthered the stated legislative purpose of protecting the public from sexual offenders. Id. While weighing the seven nonexhaustive guideposts set forth in *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644,[1] we determined that the act did not impose a new affirmative disability or further the traditional aims of punishment, but imposed an inconvenience comparable to the renewal of a driver's license. *Cook* at 418, 420. Because we concluded that the registration requirements were not punitive, but remedial, in

---

1. "These guideposts include '[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * * .' (Footnotes omitted.) " *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570, quoting *Mendoza-Martinez*, 372 U.S. at 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644.

nature, we held that the retrospective application of Megan's Law did not violate the Ex Post Facto Clause.  Id. at 423.

{¶ 35} In *State v. Williams* (2000), 88 Ohio St.3d 513, 528, 728 N.E.2d 342, we relied upon our decision in *Cook* and held that because Megan's Law did not impose punishment, it necessarily did not violate the Double Jeopardy Clauses of the Constitutions of the United States and the state of Ohio.

{¶ 36} In *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, we considered whether Megan's Law violated an offender's right to procedural due process afforded by the United States and Ohio Constitutions by imposing a sex-offender-classification-and-registration requirement without first conducting a hearing.  Adhering to our holdings in *Cook* and *Williams*, we determined that an offender suffers neither bodily restraint nor punishment as a result of the de minimis registration requirements imposed by Megan's Law; thus, classification did not interfere with a protected liberty or property interest, and due process did not require a court to conduct a hearing before finding a defendant to be a sexually oriented offender.  Id. at ¶ 14-15, 18.

*S.B. 5*

{¶ 37} In 2003, the General Assembly enacted S.B. 5, amending Megan's Law to provide that regardless of when a sexually oriented offense that is not registration-exempt occurred, sex offenders had to personally register with the sheriff of the county in which they (a) resided or were temporarily domiciled for more than five days, (b) attended school, and/or (c) worked for more than 14 days or for an aggregate of 30 days in a calendar year.  Former R.C. 2950.04(A)(1), 150 Ohio Laws, Part IV, at 6657-6658.  The act imposed a duty upon sex offenders to report not only their home address but also the address of their school and place of employment.  Former R.C. 2950.06(A), 150 Ohio Laws, Part IV, at 6673.  Adult offenders classified as sexual predators could no longer petition to remove the designation.  Former R.C. 2950.07(B)(3) and 2950.09(D)(1), 150

Ohio Laws, Part IV, at 6683, 6696. Additionally, the act provided that any information provided by sex offenders to the county sheriff was available for public inspection, and it directed the attorney general to establish an Internet database providing this information to the public. Former R.C. 2950.081, 2950.13(A)(11), 150 Ohio Laws, Part IV, at 6686, 6728-6729.

*Constitutional Challenges to S.B. 5*

{¶ 38} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, we considered whether Megan's Law remained a civil, regulatory scheme following its amendment by S.B. 5. The issue in *Wilson* concerned whether an appellate court should apply a civil or criminal standard of review to a trial court decision not to classify an offender as a sexual predator. Adhering to our decisions in *Cook* and *Williams*, we held that sex-offender-classification proceedings were not criminal in nature, id. at ¶ 32, notwithstanding any increased burdens and reporting requirements established by S.B. 5. We therefore concluded that courts reviewing the outcome of sexual-predator-classification hearings should apply the civil manifest-weight-of-the-evidence standard and affirm a trial court judgment if it was supported by some competent, credible evidence. *Wilson* at ¶ 32.

{¶ 39} In *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, we addressed retroactivity and ex post facto challenges to R.C. Chapter 2950, as amended by S.B. 5. Although we recognized that the law "may pose significant and often harsh consequences for offenders," then Justice O'Connor (now Chief Justice), writing for the court, explained that the amendments enacted by S.B. 5 had not "transmogrified the remedial statute into a punitive one." Id. at ¶ 32. Further, we acknowledged the General Assembly's "clear reaffirmation of an intent to protect the public from sex offenders" and concluded that "the more burdensome registration requirements * * * were not born of a desire to punish." Id. at ¶ 35-36. Recognizing that " 'consequences as

drastic as deportation, deprivation of one's livelihood, and termination of financial support have not been considered sufficient to transform an avowedly regulatory measure into a punitive one,' " we determined that the additional burdens imposed by S.B. 5 did not amount to punishment. Id. at ¶ 39, quoting *Doe v. Pataki* (C.A.2, 1997), 120 F.3d 1263, 1279. Accordingly, we held that the amendments enacted by S.B. 5 did not violate the retroactivity clause of the Ohio Constitution. Id. at ¶ 40. Furthermore, based on our conclusion that R.C. Chapter 2950 established a civil, remedial regulatory scheme, we rejected Ferguson's related ex post facto challenge. Id. at ¶ 43.

### S.B. 10 – The Adam Walsh Act

{¶ 40} On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") with the express intent "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Title of the Adam Walsh Child Protection and Safety Act, Pub.L. 109-248, 120 Stat. 587. The act establishes the Sex Offender Registration and Notification Act ("SORNA") with the stated purpose of creating uniform national classification and reporting standards to protect the public from sex offenders and child-victim-oriented offenders. Section 16901 et seq., Title 42, U.S.Code. Additionally, Congress designed SORNA with the intent "to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." Section 8894-01, Title 72, C.F.R.

{¶ 41} To comply with the Adam Walsh Act, the General Assembly passed S.B. 10 in June 2007. S.B. 10 repealed Ohio's prior sex-offender-classification scheme, replacing it with a three-tiered system classifying offenders automatically based on the offense of conviction: an adult Tier I offender is

required to register every year for 15 years; an adult Tier II offender is required to register every 180 days for 25 years; and a Tier III offender is required to register every 90 days for life. R.C. 2950.01(E) through (G), 2950.06(B), and 2950.07(B).

{¶ 42} As did the S.B. 5 amendments to Megan's Law, S.B. 10 also requires offenders to personally register with the sheriff of the county or counties in which they reside, attend school, and work. R.C. 2950.04(A)(2) and 2950.041(A)(2). However, the act reduces the amount of time that an offender may reside or be temporarily domiciled in a county without registering from five to three days, and an offender must register in any county in which the offender works for more than three days or for an aggregate period of 14 or more days in the calendar year (shortened from 14 days and 30 days respectively).

{¶ 43} Additionally, R.C. 2950.10 and 2950.11 require the sheriff to provide to victims, if the information is requested, and to certain community members, notice of the name, address, offense, and photograph of registered Tier III offenders. Further, R.C. 2950.13 continues the duty of the attorney general to maintain a state registry of sex offenders for law enforcement and an Internet database providing information on sex offenders to the public.

### S.B. 10 is a Civil Remedial Scheme

{¶ 44} The enactment of S.B. 10 has brought the same types of challenges to its constitutionality that we previously considered and rejected in our review of Megan's Law and its amendments. Adherence to the rule of law established in our prior decisions requires the rejection of these new arguments because S.B. 10 has not significantly altered the regulatory system of sex-offender registration.

{¶ 45} There is no dispute that the General Assembly intended the provisions of S.B. 10 to apply retroactively. Thus, for purposes of determining whether S.B. 10 violates the Retroactivity Clause of the Ohio Constitution, the question is whether the statute " 'takes away or impairs vested rights acquired

under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.' " *Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630.

**{¶ 46}** Nonetheless, we clarified in *Ferguson* that "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment." 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 39. Further, as we explained in *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, a statute that operates retroactively is not unconstitutional if it is a remedial law, which we have defined to mean "those laws affecting merely ' "the methods and procedure[s] by which *rights are recognized, protected and enforced, not * * * the rights themselves*." ' " (Emphasis sic.) Id. at ¶ 15, quoting *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 354, 721 N.E.2d 28, quoting *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148.

**{¶ 47}** S.B. 10 does not provide for the infliction of punishment on sex offenders and therefore is a remedial law. The General Assembly expressed its intent to establish a civil, remedial system designed to "protect the safety and general welfare of the people of this state" and to "assur[e] public protection," R.C. 2950.02(B), in light of its determination that "[s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from * * * confinement," R.C. 2950.02(A)(2). The General Assembly's legislative finding that sex-offender-registration laws are necessary to protect the public because sex offenders pose a present danger — not because additional punishment should be inflicted on them — deserves deference.

**{¶ 48}** Further, this court has very recently determined that S.B. 10 is a civil, remedial law, explaining in *State v. Clayborn*, 125 Ohio St.3d 450, 2010-Ohio-2123, 928 N.E.2d 1093, that "sex-offender-classification proceedings are

civil in nature and require a civil manifest-weight-of-the-evidence standard." Id. at ¶ 11. In that case, we considered whether the time limitation for filing an appeal in a criminal or in a civil case applies to the appeal from a judgment classifying a defendant as a Tier II sex offender. Although we held that the limitations period for appeals from criminal cases applied, relying on *Cook, Wilson,* and *Ferguson*, we nonetheless determined that "an appeal from a sexual offender classification judgment is a civil matter within the context of a criminal case." Id.

{¶ 49} Contrary to the majority's position, the fact that the sex-offender-registration provisions appear in the criminal code and that the classification categories are directly linked to convictions for specific offenses does not make S.B. 10 punitive in nature. Rather, the General Assembly found that a past conviction for a sex offense is an indication of the present threat that a sex offender poses to the public, and we have previously recognized that the legislature may "us[e] past events to establish current status." *Cook*, 83 Ohio St.3d at 412, 700 N.E.2d 570.

{¶ 50} While the legislature could have employed an individualized risk assessment of the danger posed by a sex offender, no constitutional mandate exists requiring that such measures be used. See *Smith v. Doe* (2003), 538 U.S. 84, 104, 123 S.Ct. 1140, 155 L.Ed.2d 164 (the "determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment" for purposes of the Ex Post Facto Clause).

{¶ 51} Moreover, as part of the national system of sex-offender registration and notification, and in response to the federal mandate for states to comply or risk losing federal funds otherwise allocated to them, Section 16925, Title 42, U.S.Code, the General Assembly has classified individuals as Tier I, II, or III sex offenders based on the offense of which they were convicted in order to

establish in Ohio the national identification standards for these offenders. The United States Congress enacted the federal Adam Walsh Act, which Ohio adopted in S.B. 10, specifically to solve "deficiencies in prior law that had enabled sex offenders to slip through the cracks * * * [b]y facilitating the collection of sex-offender information and its dissemination among jurisdictions." *Carr v. United States* (2010), ___ U.S. ___, 130 S.Ct. 2229, 2240-2241, 176 L.Ed.2d 1152.

{¶ 52} Thus, the purpose of classifying all sex offenders into tiers based on the offense of conviction is not to punish an offender. Rather, the General Assembly sought to establish a system that provides for the efficient sharing of information about sex offenders necessary to safeguard the public from potentially dangerous individuals.

{¶ 53} The provisions of S.B. 10 do require sex offenders to register more often, in more places, and for a longer period of time than formerly required by prior laws, but this does not mean that the statute violates the Retroactivity Clause. As the court explained in *Cook*, "where no vested right has been created, 'a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.' " *Cook*, 83 Ohio St.3d at 412, 700 N.E.2d 570, quoting *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805. Nonetheless, the court emphasized that " '[e]xcept with regard to constitutional protections against *ex post facto* laws * * * *felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation*.' " (Emphasis sic.) Id., quoting *Matz* at 281-282.

{¶ 54} Because S.B. 10 does not inflict punishment on sex offenders for past crimes, applying its provisions to defendants who committed sex offenses prior to the date of its enactment does not violate the Retroactivity Clause.

{¶ 55} This view is supported by the United States Supreme Court's decision in *Smith*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164, which upheld Alaska's sex-offender-registration statute against an ex post facto challenge. The court determined that the registration requirements (1) did not resemble traditional means of punishment in that they did not place offenders on public display for ridicule but instead disseminated accurate information, id. at 97-99, (2) imposed no physical restraint, leaving offenders free to live and work without direct supervision, id. at 100-101, (3) did not promote the traditional aims of punishment so as to overcome the legislature's regulatory objective, id. at 102, (4) were not retributive, because the categories of those who had to report and the corresponding length of the reporting requirement were reasonably related to the danger of recidivism, consistent with the regulatory objective, id. at 102, (5) were rationally related to the regulatory purpose, despite the lack of an individualized assessment of the risk of recidivism, id. at 102-104, and (6) were not excessive in relation to the stated regulatory purpose given the high risk of recidivism posed by sex offenders, id. at 104.

{¶ 56} Because the practical effect of the statute did not negate the legislature's stated intent to establish a civil regulatory scheme, the United States Supreme Court held that it did not impose punishment and therefore did not violate the Ex Post Facto Clause of the United States Constitution. Id. at 105-106.

{¶ 57} Moreover, every federal circuit court of appeals to consider whether the Sex Offender Registration and Notification Act (SORNA), passed by Congress as part of the federal Adam Walsh Act, is constitutional has held that it may be retroactively applied to sex offenders who committed sex offenses prior to its enactment. See *United States v. DiTomasso* (C.A.1, 2010), 621 F.3d 17, 25; *United States v. Guzman* (C.A.2, 2010), 591 F.3d 83, 94; *United States v. Shenandoah* (C.A.3, 2010), 595 F.3d 151, 158-159; *United States v. Gould* (C.A.4, 2009), 568 F.3d 459, 466; *United States v. Young* (C.A.5, 2009), 585 F.3d

199, 203-206; *United States v. Samuels* (C.A.6, 2009)*,* 319 Fed.Appx. 389, 394-395, whose overruling on other grounds was recognized by *United States v. Utesch* (C.A.6, 2010), 596 F.3d 302, 309, fn .6; *United States v. May* (C.A.8, 2008)*,* 535 F.3d 912, 919-920; *United States v. George* (C.A.9, 2010)*,* 625 F.3d 1124, 1131; *United States v. Hinckley* (C.A.10, 2008)*,* 550 F.3d 926, 936-938; *United States v. Ambert* (C.A.11, 2009)*,* 561 F.3d 1202, 1207.

**{¶ 58}** As the Seventh Circuit Court of Appeals recently explained in *United States v. Leach* (C.A.7, 2011), 639 F.3d 769, 773, "whether a comprehensive registration regime targeting only sex offenders is penal * * * is not an open question. In *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the Supreme Court held that an Alaska sex offender registration and notification statute posed no *ex post facto* violation because it was a civil, rather than penal, statute.* * * Leach has not identified any aspects of SORNA's registration provisions that distinguish this case from *Smith.* This is unsurprising, since we too are unable to find any meaningful distinctions. Therefore, we join our sister circuits in concluding that SORNA is not an *ex post facto* law."

**{¶ 59}** There are no significant differences between Megan's Law, which this court has previously upheld, and S.B. 10, which conforms to the registration and notification requirements that have been upheld by federal circuit courts.  In accordance with our precedent and in agreement with the federal circuit courts, I would hold that S.B. 10 is constitutional because it is a civil, remedial enactment designed to protect the welfare and safety of the public.

### Conclusion

**{¶ 60}** Little justification exists to abandon the reasoning and conclusions set forth in the prior decisions of this court, especially in the context of a new statute that does nothing more than change the frequency and duration of reporting requirements imposed on sex offenders.

**{¶ 61}** For these reasons, I would affirm the judgment of the court of appeals and hold that S.B. 10 does not violate the Retroactivity Clause of the Ohio Constitution.

CUPP, J., concurs in the foregoing opinion.

_____

David P. Fornshell, Warren County Prosecuting Attorney, and Michael Greer and Stacy C. Brown, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Katherine A. Szudy, Assistant Public Defender, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecuting Attorney.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and David M. Lieberman, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.

Gamso, Helmick, & Hoolahan and Jeffrey M. Gamso; and James L. Hardiman and Carrie L. Davis, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.

Margie Slagle, urging reversal for amici curiae Cleveland Rape Crisis Center and Texas Association Against Sexual Assault.

_____