[Cite as *State v. Freeman*, 2011-Ohio-4357.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100389 |
| | | TRIAL NO. B-0908525 |
| Plaintiff-Appellee, | : | |
| | | *D E C I S I O N.* |
| vs. | : | |
| JERRY FREEMAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  August 31, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Robert R. Hastings, Jr.*, Office of the Hamilton County Public Defender, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

{¶1} On December 21, 2009, defendant-appellant Jerry Freeman was indicted for failing to provide notice of an address change. The indictment alleged that Freeman, who was required to register as a sexually oriented offender on the basis of a January 18, 1975, conviction for gross sexual imposition, had a prior conviction for failing to verify his address.

{¶2} Freeman filed a motion to dismiss the indictment, which the trial court overruled. On May 11, 2010, Freeman withdrew his plea of not guilty and pleaded no contest to failing to provide notice of an address change. The trial court found Freeman guilty. Freeman has appealed, raising two assignments of error for our review.

{¶3} We initially note that the indictment and the sentencing entry incorrectly referred to Freeman's failure-to-notify offense as a violation of R.C. 2950.05(E)(1). R.C. 2950.05(E)(1) sets forth the duties of the sheriff upon receiving a change-of-address notification. The indictment should have referred to R.C. 2950.05(F)(1), which provides that "[n]o person who is required to notify a sheriff of a change of address * * * shall fail to notify the appropriate sheriff * * *."

{¶4} A clerical error in an indictment that does not mislead or prejudice a defendant, even if carried through to the judgment entry, does not affect the validity of the conviction and may be corrected in a nunc pro tunc entry.[1] The language of the indictment and the facts set forth by the prosecutor during Freeman's plea hearing clearly indicated that he was charged with and convicted of an offense under R.C. 2950.05(F)(1). Freeman pleaded no contest to facts establishing a violation of R.C.

---

[1] See *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010, ¶13, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶18-19; *State v. Brown*, 1st Dist. Nos. C-100309 and C-100310, 2011-Ohio-1029; *State v. Marzolf*, 9th Dist. No. 24459, 2009-Ohio-3001; Crim.R. 36.

2950.05(F)(1). It is clear from the record that Freeman was not misled or prejudiced by the clerical error. Therefore, it may be corrected.

{¶5} Freeman's first assignment of error alleges that the trial court erred in overruling his motion to dismiss the indictment, because he had served his sentence for gross sexual imposition in full before July 1, 1997, and therefore, he was not required to register as a sex offender.

{¶6} Former R.C. Chapter 2950 ("Megan's Law")[2] provided that "[r]egardless of when the sexually oriented offense was committed, an offender who [was] sentenced for the sexually oriented offense to a prison term, a term of imprisonment, or any other type of confinement and, on or after July 1, 1997, [was] released in any manner from the prison term, term of imprisonment, or confinement" was required to register with the sheriff as a sexually oriented offender.[3]

{¶7} On January 22, 1971, Freeman was placed on five years' probation for armed robbery. He violated the terms of his probation, and on February 23, 1972, he was sentenced to ten to 25 years' incarceration for armed robbery. He was granted parole on September 13, 1974. While on parole for the armed robbery, he was charged with theft and gross sexual imposition. He pleaded guilty to both charges, and on June 6, 1975, he was sentenced to concurrent terms of one and one-half to five years' incarceration. His armed-robbery parole was revoked.

{¶8} In 1975, R.C. 2929.41(B)(3) provided that "a sentence of imprisonment shall be served consecutively to any other sentence of imprisonment * * * when it is imposed for a new felony committed by a probationer, parolee, or escapee." Therefore, Freeman was required to serve his armed-robbery sentence before serving his

---

[2] See Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, enacted in 1996, was amended in 2003 by Am.Sub. S.B. No. 5, 150 Ohio Laws, Part IV, 6556.
[3] R.C. 2950.04(A)(1)(a).

concurrent sentences for theft and gross sexual imposition. In addition, Freeman was required to serve one and one-half years' incarceration, the minimum term on his 1975 sentences, before again becoming eligible for parole.[4]

{¶9} On November 7, 1978, Freeman was released on parole. Freeman's parole was revoked when he was convicted of uttering, and he was sentenced on April 26, 1979, to one to five years' incarceration. Freeman then had to serve one year to become eligible for parole. The time was credited to Freeman's ten-to-25-year armed-robbery sentence. After serving the armed-robbery sentence, Freeman had to serve the five-year sentence for his 1975 convictions (including the gross-sexual-imposition conviction) and then the sentence for his 1979 uttering conviction.

{¶10} On February 26, 1981, Freeman was paroled on all offenses. He pleaded guilty to aggravated burglary in Clark County on August 21, 1981, and he was sentenced to five to 25 years' incarceration. His parole on all prior convictions was revoked. He had to serve five years before again becoming eligible for parole. At that time, he was still serving the ten-to-25-year sentence on his 1972 armed-robbery conviction.

{¶11} Freeman was again granted parole on April 23, 1996. On September 19, 1996, he was convicted of attempted aggravated burglary and sentenced to four years' incarceration. On February 1, 1997, Freeman's 1972 armed-robbery sentence expired. At that time, Freeman began to serve his 1975 concurrent sentences for theft and gross sexual imposition. On December 12, 2000, Freeman was found not to be a sexual predator and was classified under Megan's Law as a sexually oriented offender. He completed his 1975 sentences, including his sentence for gross sexual imposition, on September 6, 2001. He was paroled on February 12, 2002. On October 24, 2002, he

---

[4] Although Freeman became eligible for parole after serving the minimum term on his new sentences, the time he served was actually credited to the ten-to-25-year armed-robbery sentence, as required by former R.C. 2929.41(B)(3) and former R.C. 2929.41(C)(2).

was convicted of failing to provide notice of a change of address, and on June 22, 2006, he was convicted of failing to verify his current address.

{¶12}   The record shows that Freeman began serving his sentence for gross sexual imposition on February 2, 1997.  That sentence expired on September 6, 2001.  Therefore, under former R.C. 2950.04(A)(1)(a), Freeman had to register as a sexually oriented offender, and under former R.C. 2950.05, he was required to provide notice at least 20 days prior to changing his address.  The first assignment of error is overruled.

{¶13}   Freeman's second assignment of error alleges that the trial court erred in accepting his no-contest plea and finding him guilty of the failure-to-notify offense, because the offense was based upon an unlawful reclassification under Am.Sub.S.B. No. 10 ("Senate Bill 10").

{¶14}   The Ohio Supreme Court, citing *State v. Bodyke*,[5] held in *State v. Gingell*[6] that an offender who was judicially classified as a sexually oriented offender and ordered to register annually for ten years under Megan's Law could not be prosecuted for failing to comply with a more restrictive registration requirement imposed after reclassification as a Tier III sex offender under Senate Bill 10.

{¶15}   Freeman was classified under Megan's Law as a sexually oriented offender on December 12, 2000.  There is nothing in the record to show that Freeman was reclassified as a tier offender or subject to more restrictive registration duties under Senate Bill 10.  Therefore, the record does not demonstrate the alleged error.

{¶16}   Freeman also alleges that the trial court erred in retroactively applying current R.C. 2950.99, which proscribes the penalty for Freeman's failure-to-notify

---

[5] 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753.
[6] 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192.

offense. Freeman argues that the court should have applied the version of R.C. 2950.99 that was in effect at the time of his original classification as a sexually oriented offender.

{¶17} "A statute is retroactive if it penalizes conduct that occurred before its enactment."[7] A statute that "does not 'change * * * the legal consequences of acts completed before its effective date,' but simply mandates an enhanced penalty for acts committed after the effective date of the provision," is not retrospective.[8]

{¶18} The penalty provisions contained in current R.C. 2950.99 became effective January 1, 2008. Freeman pleaded guilty to failing to notify the sheriff of an address change on or about October 15, 2009. Although Freeman's duty to register stemmed from his sex offense, his failure to notify the sheriff of an address change was a new offense that he had committed after the effective date of current R.C. 2950.99's penalty provisions.[9] Therefore, current R.C. 2950.99 was not applied retroactively to Freeman's conduct.

{¶19} The Ohio Supreme Court's decision in *State v. Williams*[10] does not require a different result. Williams had been indicted in November 2007 for unlawful sexual conduct with a minor. He had pleaded guilty on December 14, 2007. During the plea colloquy, the trial court had indicated that Williams would not be subject to reporting requirements. On January 1, 2008, Senate Bill 10's new tier classifications for sexual offenders became effective. Williams was sentenced on February 1, 2008. He moved to be sentenced under the Megan's Law version of R.C. Chapter 2950 that was in effect at the time he had committed his offense. The trial court applied Senate

---

[7] See *State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, 814 N.E.2d 818, ¶7.
[8] See *State v. Clark* (Aug. 5, 1992), 1st Dist. No. C-910541, citing *Miller v. Florida* (1987), 482 U.S. 423, 107 S.Ct. 2446.
[9] See *State v. Richey*, 10th Dist. No. 09AP-36, 2009-Ohio-4487.
[10] ____ Ohio St.3d ____, 2011-Ohio-3374, ____ N.E.2d ____.

Bill 10's classification scheme and labeled Williams a Tier II sex offender. Williams's classification was upheld by the appellate court.

{¶20} The Ohio Supreme Court reversed Williams's tier classification under Senate Bill 10, holding that "2007 Am.Sub.S.B. No. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws."[11] The court concluded that Senate Bill 10's more stringent classification, registration, and community-notification provisions imposed "new or additional burdens, duties, obligations, or liabilities as to a past transaction" and created "new burdens, new duties, new obligations, or new liabilities not existing at the time" upon sex offenders who had committed their crimes prior to Senate Bill 10's enactment.[12] The court held that Senate Bill 10's classification, registration, and community-notification provisions were punitive and could not constitutionally be retroactively applied to sex offenders who had committed their sex offenses before its enactment.

{¶21} *Williams* dealt with the imposition of Senate Bill 10's more stringent registration requirements upon an offender who had committed his sex offense prior to its enactment. The instant case case deals with the imposition of current R.C. 2950.99's penalty provisions on Freeman, who committed his failure-to-notify offense after the effective date of that statute. Although current R.C. 2950.99 has the same effective date as Senate Bill 10, it was not enacted as part of Senate Bill 10. It was enacted as part of Senate Bill 97, which, among other things, modified the penalties for violations of the sex-offender registration and notification laws.

---

[11] Id. at syllabus.
[12] Id. at ¶19.

**{¶22}** Freeman had committed a sex offense and had been classified as a sexually oriented offender under Megan's Law. Pursuant to that classification, he was required to annually register as a sex offender for ten years and to notify the sheriff of any change in his address. There is no evidence that Freeman was reclassified under Senate Bill 10 or that Senate Bill 10 affected Freeman's reporting duties. Freeman committed his failure-to-notify offense on or about October 15, 2009, well after the effective date of current R.C. 2950.99. Freeman had an ongoing duty to notify the sheriff of any change of address. He failed to do so. Freeman's sentence was based on his failure-to-notify offense, which occurred after R.C. 2950.99's effective date. The second assignment of error is overruled.

**{¶23}** The judgment of the trial court is affirmed, but the cause is remanded for correction of the record to reflect a conviction under R.C. 2950.05(F)(1).

Judgment affirmed, and cause remanded.

**DINKELACKER, P.J., HILDEBRANDT,** and **CUNNINGHAM, JJ.**

Please Note:

The court has recorded its own entry this date.