[Cite as *State v. Johnson*, 2015-Ohio-4650.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : CASE NO. CA2015-02-016

                              : O P I N I O N

    - vs -                           11/9/2015

                              :

RYAN BLAKE JOHNSON, :

    Defendant-Appellant. :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2014-09-1475

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant

**PIPER, P.J.**

{¶ 1} Defendant-appellant, Ryan Johnson, appeals a decision of the Butler County Court of Common Pleas accepting his guilty plea.

{¶ 2} Johnson was indicted on charges of rape of a child under 13 years old and gross sexual imposition. As part of a plea bargain, the state amended the rape charge to a first-degree felony without the age specification, and the gross sexual imposition charge was

dismissed. Johnson read and signed a plea form that indicated the details of the plea agreement, including that Johnson would be classified as a Tier III sex offender as a result of his rape conviction.

{¶ 3} The trial court held a plea hearing, during which it performed a colloquy informing Johnson of the constitutional rights he was relinquishing, as well as details surrounding the plea agreement and sentencing. Johnson pled guilty at the end of the hearing, and the trial court accepted Johnson's plea as knowingly, voluntarily, and intelligently made. The trial court later sentenced Johnson to eight years in prison. Johnson now appeals the trial court's decision to accept his guilty plea, raising the following assignment of error.

{¶ 4} DEFENDANT-APPELLANT'S PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY.

{¶ 5} Johnson argues in his sole assignment of error that the trial court erred in accepting his guilty plea because the trial court misinformed him of notification requirements and did not address his right to subpoena witnesses.

{¶ 6} When a defendant enters a guilty plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily, and the failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Butcher*, 12th Dist. Butler No. CA2012-10-206, 2013-Ohio-3081, ¶ 8. To ensure that a defendant's plea is properly accepted, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C). *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994, ¶ 10.

{¶ 7} According to Crim.R. 11(C)(2), the trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

(a) Determining that the defendant is making the plea voluntarily,

- 2 -

with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 8} A guilty plea is invalid if the trial court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the trial court to verify that the defendant understands the constitutional rights he is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. While the most accurate way to inform a criminal defendant of his constitutional rights during the plea colloquy "is to use the language contained in Crim.R. 11(C), * * * a trial court's failure to literally comply with Crim.R. 11(C) does not invalidate a plea agreement if the record demonstrates that the trial court explained the constitutional right '*in a manner reasonably intelligible to that defendant.*'" (Emphasis sic.) *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶ 14 quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 27. "This is because a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Barker* at ¶ 15.

{¶ 9} Johnson first argues that the trial court did not strictly comply with Crim.R. 11(C) because the court failed to tell him that one of the rights he was waiving was the right to have the court compel witnesses to appear and testify on his behalf. According to Crim.R.

11(C)(2)(c), a defendant must be informed that by pleading guilty, he is waiving the right "to have compulsory process for obtaining witnesses in the defendant's favor."

{¶ 10} During the trial court's colloquy at the plea hearing, the court stated:

Do you further give up your right to call or compel witness [sic] to testify against yourself? What that means is you give up your right to call - - to force witnesses to take the witness stand and be a witness against yourself. And further the - - to be a witness, sorry. You're giving up your right to - - to force witnesses to come to the court through the subpoena process to compel them to testify even though they don't wish to be here.

You're also giving up your right, what we call you [sic] right or confrontation of the right to face your accusers. In every trial the accusing witnesses have to take the witness stand, they have to testify under oath; they're subject to cross examination by your attorney. But again, today because you are pleading guilty you give up this right of confrontation, and also what we call compulsory service; do you understand that?

{¶ 11} While the trial court misspoke at first when explaining Johnson's right to compulsory process, we nonetheless find that the trial court corrected its misstatement and explained the right of compulsory service in a way that was reasonably intelligible to Johnson. The trial court apologized for its misstatement, which indicated to Johnson that the trial court had previously misspoke when indicating the compulsory process was to call witnesses *against* Johnson. After the court's apology, it went forward to correctly indicate that the right being waived was the right to make the court compel a witness' appearance as well as testimony. The court's discussion clearly included a reiteration that Johnson was waiving his right of compulsory service.

{¶ 12} There is no indication in the record that Johnson did not understand that compulsory service was specific to his right to have witnesses appear in his defense. In fact, the court always addressed the compulsory service issue to Johnson as "your right." Johnson was aware he was waiving his right by pleading guilty.

{¶ 13} The court's colloquy successfully informed Johnson that the state had the

burden to prove the charges against him, that he had the right against self-incrimination, and that the state had to prove the charges beyond a reasonable doubt. The trial court correctly explained that the right to compel included making witnesses "testify even though they don't wish to be here," which obviously explained to Johnson that the court would require these witnesses' appearance on behalf of Johnson. This is especially true where the trial court informed Johnson that the plea hearing was held to inform him of important information regarding his plea and to allow Johnson to question any fact regarding the plea process.

{¶ 14} At the beginning of the plea hearing, the court directly addressed Johnson and stated, "Now, I'm going to go over a number of issues with you this morning on the record. If at any point during our conversation you are unsure of anything I'm going to discuss, you need to stop me so I can review those – those issues with you in more detail. Or if necessary, we can recess the hearing so you can talk privately to your attorney * * *." Later during the colloquy, and specific to the compulsory service issue, the trial court specifically inquired as to whether or not Johnson was willing to "further give up your right to call or compel witness [sic] to testify * * *."

{¶ 15} The court's colloquy was directed at Johnson specifically, and he was informed at each turn that it was *his* right to compulsory service, and Johnson clearly understood that the right being addressed was the right to call witnesses on his behalf. Therefore, there is no indication that the trial court's initial, brief, misstatement somehow vitiated Johnson's understanding that he had a right to compel witnesses to testify for him.

{¶ 16} This is especially true where Johnson signed the plea form, which included a very specific statement that the plea would result in waiver of his right to "use the power of the court to call witnesses to testify for me." Johnson verified during the plea hearing that he read the form, signed it, and understood it, and posed no questions or indication of misunderstanding during the trial court's colloquy. *See Barker*, 2011-Ohio-4130, at ¶ 25

("alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question").

{¶ 17} After reviewing the record, we find that the trial court explained the right of compulsory service to Johnson in a manner that would make him understand that he was waiving his right to compulsory service, and that any ambiguity caused by the trial court's initial misstatement was certainly clarified by the written plea agreement. Thus, the record reveals the trial court strictly complied with Crim.R. 11(C)(2)(c).

{¶ 18} Johnson also argues that the trial court failed to substantially comply with Crim.R. 11(C) by misstating the repercussions of his Tier III sexual classification. Crim.R. 11(C)(2)(a) requires a trial court to inform a defendant of the maximum penalty associated with a plea. However, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b), which includes notification of the maximum penalty involved. *Shavers*, 2015-Ohio-1485, at ¶ 9. Substantial compliance with this provision of Crim.R. 11 is sufficient so long as no prejudice results. *State v. Irvin*, 12th Dist. Warren No. CA2013-03-027, 2013-Ohio-5209, ¶ 7. "To demonstrate prejudice in this context, the defendant must show that the plea would otherwise not have been entered." *Id.*

{¶ 19} Pursuant to the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effects of his plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12.

{¶ 20} The trial court's colloquy should have informed Johnson that community notification was a mandatory aspect of his Tier III classification. Instead, the trial court stated that "the County Sheriff or the people who are responsible *could* put you on a notification list of where you live * * *." (Emphasis added.) Despite the ambiguity raised by the trial court's

statement, we find that the trial court's colloquy was in substantial compliance with Crim.R. 11(C)(2)(a) because it informed Johnson that he would be subject to community notification and did nothing to make Johnson believe that he would not be subject to the notification requirement.

{¶ 21} While the trial court did not say that the notification was mandatory, its statement that the sheriff or other personnel *could* require public notification clearly indicates that Johnson was aware that he would be subject to notification. This is not a case where the trial court incorrectly stated that Johnson would not be subject to notification. Instead, while the trial court should have used the word "must" instead of "could," the court's colloquy nevertheless informed Johnson that his rape conviction would result in a Tier III classification, and that "every 90 days for the rest of your life you will be required to register in the County in which you live, your residence and - - and your work employment * * *." The court further explained, "now, equally important there's also what we call public notification requirement attached to that." The words "requirement attached" indicates that such notification was mandatory in nature, and that the requirement was in place because of Johnson's classification. There is no indication in the record that Johnson somehow believed that the trial court's statement that notification "could" occur made the mandatory nature of the notification null or void.

{¶ 22} Again, we also note that Johnson's plea form serves to clarify any ambiguity caused by the trial court's statement during the colloquy. The plea form contains a notation that the plea would result in Johnson being classified a "Tier III sex offender, (every 90 days for life)." Johnson did not indicate during the plea hearing that he was confused regarding the notification requirement, or that he understood the trial court's colloquy to be in conflict with the written plea form. Moreover, there is no indication in the record that Johnson was prejudiced by the trial court's inclusion of the word "could" in regard to the notification issue.

Johnson does not assert that he would not have made his plea had he been told that notification was mandatory, or that he was led to believe he was not subject to the notification requirement.

{¶ 23} After reviewing the record and considering the totality of the circumstances surrounding Johnson's plea, we find that Johnson subjectively understood the effects of his plea, including the notification requirement associated with his rape conviction and Tier III classification.

{¶ 24} Having found that Johnson's plea was knowing, voluntary, and intelligent, we find that the trial court did not err in accepting the plea. As such, Johnson's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.