[Cite as *State v. Hagan*, 2019-Ohio-1047.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Appellee, | : | CASE NO. CA2018-07-136 | |
| - vs - | : | O P I N I O N<br>3/25/2019 | |
| | : | | |
| JESSE LEE HAGAN, | : | | |
| Appellant. | : | | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-02-0357

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Scott N. Blauvelt, 315 South Monument, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Jesse Lee Hagan, appeals from his conviction and sentence in the Butler County Court of Common Pleas after he pled guilty to one count of third-degree felony sexual battery. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On March 28, 2018, the Butler County Grand Jury returned a three-count

indictment charging Hagan with single counts of gross sexual imposition, rape, and sexual battery. According to the bill of particulars, the charges arose after Hagan, an adoptive parent, stepparent, guardian, custodian, or person in loco parentis to the 14-year-old victim, was alleged to have touched the victim's vagina or breasts or both for purposes of sexual gratification or arousal. The bill of particulars also alleged Hagan had digitally penetrated the victim.

{¶ 3} On May 10, 2018, Hagan entered into a plea agreement and agreed to plead guilty to one count of third-degree felony sexual battery in exchange for the remaining charges against him being dismissed. As part of his plea agreement, Hagan executed a plea form noting his intent to plead guilty to the sexual battery offense. As relevant here, the plea form stated:

> Upon conviction Defendant will be designated a Tier III sex offender requiring in-person verification every 90 days for life among other restrictions including a prohibition from living within 1000 feet of a school.

{¶ 4} After Hagan executed the plea form, a plea hearing was held before the trial court. During this hearing, Hagan acknowledged that he had read and signed the plea form with a full understanding of its contents after conferring with his trial counsel. This included the fact that he would be subject to various requirements and restrictions as a Tier III sex offender.

{¶ 5} After confirming Hagan had read and signed the plea form, the trial court addressed Hagan and stated the following:

> THE COURT: The Court understands that you are entering a guilty plea to Count III. That is sexual battery, a felony of the third degree. Please understand that as a result of this plea this Court could sentence you to 60 months in prison and impose a fine in the amount of $10,000.
>
> Also you will be designated a tier 3 sex offender and that will require that you register in person for verification every 90 days

for the rest of your life. There will be other restrictions which will include a prohibition from moving within a thousand feet of a school. Do you understand that?

THE DEFENDANT: Yes.

{¶ 6} Further into the proceedings, the trial court again addressed Hagan and stated the following:

THE COURT: Do you have any questions about anything that we discussed?

THE DEFENDANT: No.

THE COURT: Do you have any questions about anything that we have not discussed?

THE DEFENDANT: No.

THE COURT: Do you have any questions about anything that's on this plea form that you told me you signed?

THE DEFENDANT: No.

{¶ 7} Hagan then entered his plea of guilty, which the trial court accepted. Upon accepting Hagan's guilty plea, the trial court ordered a presentence-investigative report and scheduled the matter for sentencing.

{¶ 8} On June 14, 2018, the parties reconvened for purposes of sentencing. During this hearing, but prior to issuing its sentencing decision, the trial court noted that it had considered the necessary sentencing statutes, R.C. 2929.11 and 2929.12, as well as "the record, the charge, the statements made at this hearing, the letter that I received from Mr. Hagan, the victim impact statements and the pre-sentence investigation report."

{¶ 9} The trial court also noted that Hagan had previously served time in prison after he was convicted of trafficking in heroin. The trial court further noted that following Hagan's release from prison that "[w]hile he was under supervision to the parole authority he violated his post-release control and completed the River City program."

- 3 -

{¶ 10} Continuing, the trial court stated:

> The Court notes within the specifics to the facts of this case, that the Defendant did hold a special – had a relationship of trust with the victim in this case. The victim perceived him to be a father figure and he likewise perceived to be her (sic) a daughter-like figure. And the Court finds he used that position of trust in facilitating this offense.

{¶ 11} Concluding, the trial court noted the "serious nature of this offense and the age of this victim. The victim was 14 years old when this offense occurred." The trial court then issued its sentencing decision and sentenced Hagan to serve 42 months in prison. The trial court also ordered Hagan to pay court costs and notified Hagan that he would be subject to a mandatory five-year postrelease control term.

**Appeal**

{¶ 12} Hagan now appeals from his conviction and sentence, raising two assignments of error for review.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN ACCEPTING A GUILTY PLEA WHICH WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY.

{¶ 15} In his first assignment of error, Hagan argues his guilty plea was not entered knowingly, intelligently, and voluntarily since the trial court failed to explicitly advise him, as a Tier III sex offender, that he would be subject to a mandatory community notification requirement as provided for by R.C. 2950.11(F)(1)(a) as part of its Crim.R. 11(C) plea colloquy. According to Hagan, this constitutes a complete failure on behalf of trial court to comply with Crim.R. 11(C)(2)(a), thereby necessitating his guilty plea be vacated without the need to show prejudice. We disagree.

**Standard of Review: Knowing, Intelligent, and Voluntary Guilty Plea**

{¶ 16} When a defendant enters a guilty plea in a criminal case, the plea must be

knowingly, intelligently, and voluntarily made. *State v. Mosley*, 12th Dist. Warren No. CA2014-12-142, 2015-Ohio-3108, ¶ 6. "Failure on any of those points 'renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. McQueeney*, 148 Ohio App.3d 606, 2002-Ohio-3731, ¶ 18 (12th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To ensure that a defendant's guilty plea is knowingly, intelligently and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). *State v. Reynolds*, 12th Dist. Madison No. CA2018-02-005, 2018-Ohio-4942, ¶ 9.

{¶ 17} As relevant here, pursuant to Crim.R. 11(C)(2), the trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 18} A guilty plea is invalid if the trial court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the trial court to verify the defendant understands the constitutional rights he is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. On the other hand, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *State v. Floyd*,

12th Dist. Warren No. CA2016-09-077, 2017-Ohio-687, ¶ 14. Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effects of his plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12.

**Analysis**

{¶ 19} As noted above, Hagan does not dispute that the trial court strictly complied with Crim.R. 11(C)(2)(c), which requires the trial court to verify the defendant understands the constitutional rights that he is waiving upon entering a guilty plea. Hagan also does not dispute that he was notified of the nonconstitutional requirements of Crim.R. 11(C)(2)(b). Hagan instead argues the trial court completely failed to comply with Crim.R. 11(C)(2)(a) by failing to notifying him of the maximum penalty he faced since the trial court did not explicitly advise him, as a Tier III sex offender, that he would be subject to a mandatory community notification requirement as provided for by R.C. 2950.11(F)(1)(a) as part of its Crim.R. 11(C) plea colloquy. We find no merit to Hagan's claim.

{¶ 20} In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, the Ohio Supreme Court found that R.C. Chapter 2950 is punitive and therefore part of the penalty imposed upon a defendant. *Id.* at ¶ 16. Two years later, with full knowledge of the Ohio Supreme Court's decision in *Williams*, this court found "Crim.R. 11 obligates a trial court to advise a defendant of the basic registration requirements under R.C. Chapter 2950 before accepting a guilty plea." *State v. Butcher*, 12th Dist. Butler No. CA2012-10-206, 2013-Ohio-3081, ¶ 11. However, although these advisements are part of the nonconstitutional notifications found in Crim.R. 11(C)(2)(a) and (b), we nevertheless held that "a trial court is not required to review each of the numerous individual restrictions and requirements set forth in R.C. Chapter 2950 to substantially comply with Crim.R. 11." *Id.* These requirements and

restrictions include registration, verification, and community notification requirements, as well as residential restrictions.

{¶ 21} Upon outlining these principles in *Butcher*, this court thereafter upheld appellant's guilty plea upon finding:

> In the present case, the record indicates that Butcher subjectively understood the maximum penalty resulting from his guilty plea, including his classification as a Tier III sex offender and the resulting registration requirements. During the plea hearing, the trial court correctly advised Butcher that he would be labeled a Tier III sex offender. The trial court also notified Butcher that he would be subject to certain registration requirements as a result of this classification. The trial court specifically informed Butcher that every 90 days, for the rest of his life, he would be required to register with the sheriff of the county where he resides. Importantly, after informing Butcher of his Tier III classification and the lifetime reporting requirements, the trial court specifically asked Butcher if this "in any way change[d] what you wish to do here as far as plea," and Butcher respond, "no."

> The trial court's failure to specify that Butcher would also be required to register with the sheriff of the county in which he works, attends school, or "temporarily resides" does not invalidate his plea. Rather, *the totality of the circumstances indicate that Butcher subjectively understood that by pleading guilty to rape, he would be subjected to certain restrictions as a Tier III sex offender*. Accordingly, we find that the statements made by the trial court with regard to Butcher's registration requirements under R.C. Chapter 2950 were such that the trial court substantially complied with the nonconstitutional provisions of Crim.R.11.

(Emphasis added.) *Id.* at ¶ 12-13.

{¶ 22} Relying on this court's decision in *Butcher*, we find the statements made by the trial court regarding the various requirements and restrictions Hagan faced as a Tier III sex offender in this case were such that the trial court, at worst, substantially complied with the nonconstitutional provisions of Crim.R. 11(C)(2)(a). This is true despite the fact that the trial court failed to explicitly notify Hagan that he would be subject to a mandatory community notification requirement. This is because, as noted above, "a trial court is not

required to review each of the numerous individual *restrictions and requirements* set forth in R.C. Chapter 2950 to substantially comply with Crim.R. 11." (Emphasis added.) *Id.* at ¶ 11; *see State v. Reeder*, 12th Dist. Butler Nos. CA2013-05-075 and CA2013-07-126, 2014-Ohio-2233, ¶ 16-19 (upholding appellant's plea upon finding "the totality of the circumstances indicates appellant subjectively understood that by pleading guilty to rape, he would be subjected to certain restrictions as a Tier III sex offender"); *see also State v. Creed*, 8th Dist. Cuyahoga No. 97317, 2012-Ohio-2627, ¶ 17 ("[t]he fact that appellant was not specifically informed that he would be prohibited from living within 1,000 feet of a school does not invalidate his plea").

{¶ 23} Although not explicit, this court has already found as much in *State v. Henson*, 12th Dist. Butler Case No. CA2013-12-221, 2014-Ohio-3994, ¶ 13. As this court stated in *Henson*:

> [A] trial court is not required to review each of the numerous individual restrictions and requirements set forth in R.C. Chapter 2950 to substantially comply with See Crim.R. 11. *However, where a trial court reviews a specific requirement set forth in Chapter R.C. 2950, such as the requirement for community notification, the trial court is under an obligation to provide accurate information to the defendant.* Where a trial court affirmatively misadvises a defendant about his reporting and notification requirements under R.C. Chapter 2950, the trial court has failed to comply with the requirements of Crim.R. 11(C), and the defendant need not show prejudice to have his plea vacated.

(Emphasis added. Internal citation omitted.)

{¶ 24} This court's holding in *Henson* demonstrates that a trial court may, but is not required to, specifically notify a defendant of the community notification requirement when the defendant enters a guilty plea to an offense that includes a Tier III sex offender classification. But, although not required to do so, where the trial court does advise a defendant of the community notification requirement, the trial court must provide the

defendant with accurate information as it relates to that specific requirement. This includes, as noted by *Henson*, the community notification requirement as provided by R.C. 2950.11(F)(1)(a). *See id.* at ¶ 14 (invalidating appellant's guilty plea where the trial court incorrectly informed appellant, as a Tier III sex offender, that he would not be subject to the community notification requirement).

{¶ 25} Our holding is further supported by the Second District Court of Appeals in *State v. Mayes*, 2nd Dist. Montgomery No. 27194, 2017-Ohio-9313. In that case, just as in the case at bar, appellant argued his guilty plea was not knowingly, intelligently, and voluntarily entered where the trial court advised appellant, as a Tier III sex offender, that he would be required to register every 90 days for the rest of his life as part of its Crim.R. 11(C) plea colloquy but failed to explicitly advise appellant that he would also be subject to a mandatory community notification requirement. *Id.* at ¶ 17.

{¶ 26} Finding the trial court "at least partially complied" with the requirements of Crim.R. 11(C)(2)(a) by advising appellant of some of the requirements and restrictions found in R.C. Chapter 2950, the Second District rejected appellant's claim that his guilty plea was not knowingly, intelligently, and voluntarily entered. In so holding, the Second District stated, in pertinent part, the following:

> The court advised Mayes that he would be "required to register as a Tier [III] offender every 90 days for the rest of [his] life." Although the court does not appear to have complied completely with Crim.R. 11, inasmuch as it did not inform Mayes "about the fact that a Tier III conviction includes [a] community notification [requirement]," the court at least partially complied with the rule. Mayes says that the omission rendered his plea unknowing and involuntary, but the mere recitation of these words falls far short of the demonstration of prejudice that would entitle Mayes to have his plea vacated.

(Brackets sic. Internal citations omitted.) *Id.* at ¶ 17; *see also State v. Young*, 2d Dist. Greene No. 2013-CA-22, 2014-Ohio-2213, ¶ 20 (trial court failed to substantially comply

with Crim.R. 11[C] by accepting appellant's guilty plea where the trial court "failed to discuss any of the registration requirements").

{¶ 27} Mayes appealed from the Second District's decision to the Ohio Supreme Court. The Ohio Supreme Court nevertheless declined Mayes' motion to file a delayed appeal in *6/27/2018 Case Announcements, 2018-Ohio-2418*, and thereafter denied review in both *8/15/2018 Case Announcements*, 2018-Ohio-3257, and *9/26/2018 Case Announcements #2*, 2018-Ohio-3868.

{¶ 28} Although our holding in *Butcher* and the Second District's holding in *Mayes* are not currently under review, the Ohio Supreme Court is currently reviewing the Sixth District Court of Appeals' holding originally pronounced in *State v. Ragusa*, 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373; specifically, that before a defendant enters a plea that results in the defendant being classified as a sex offender under R.C. Chapter 2950, "the trial court must inform the defendant of all of the punitive consequences of entering a guilty plea and having a * * * sex offender classification in order to substantially comply with non-constitutional provisions of Crim.R. 11." *Id.* at ¶ 5.

{¶ 29} The Sixth District's holding in *Ragusa* has resulted in that district invalidating several pleas upon finding the trial court failed to notify the defendant of all of the various requirements and restrictions set forth in R.C. Chapter 2950. *See, e.g., State v. Dornoff*, 6th Dist. Wood No. WD-16-072, 2018-Ohio-3084 (plea invalid where trial court failed to inform appellant of the registration requirements, community notifications, and residential restrictions associated with being classified as a Tier II and III sexual offender prior to accepting appellant's guilty plea); *State v. Gilbert*, 6th Dist. Sandusky No. S-16-047, 2018-Ohio-879, ¶ 16 (guilty plea invalid where "the trial court's complete failure to mention the residential restrictions outlined in R.C. 2950.034 renders [appellant's] plea involuntary and thus invalid under Crim.R. 11[C][2]"); *State v. Dangler*, 6th Dist. Williams No. WM-16-010,

2017-Ohio- 7981 (plea invalid because trial court informed defendant of Tier III classification but not registration or notification requirements); *State v. Sanders*, 6th Dist. Lucas No. L-15-1068, 2016-Ohio-1397, ¶ 8 (plea invalid because trial court informed defendant of Tier III classification but not registration requirements); *State v. McMahon*, 6th Dist. Sandusky No. S-14-036, 2015-Ohio-3300, ¶ 15 (plea invalid where trial court did not inform defendant of classification level or its implications, including registration and community notification requirements of R.C. Chapter 2950); *see also State v. Tebary*, 6th Dist. Lucas No. L-15-1235, 2016-Ohio-3095, ¶ 7-10 (upholding appellant's guilty plea where trial court notified appellant he would be subject to registration, verification, and community notification requirements, as well as residential restrictions, even though trial court "did not inform him that the registration requirement was for every 90 days, for the rest of his life").

{¶ 30} Although informative, unless and until the Ohio Supreme Court affirms this proposition of law as initially set forth by the Sixth District in *Ragusa*, we decline to accept the Sixth District's holding in *Ragusa* and its progeny as the law of this district and adhere to our decisions in *Butcher* and *Henson*, as well as the Second District's decision in *Mayes*.

{¶ 31} In light of the foregoing, we find no merit to Hagan's claim that his guilty plea was not knowingly, intelligently, and voluntarily entered since the trial court failed to explicitly advise him, as a Tier III sex offender, that he would be subject to a mandatory community notification requirement as provided for by R.C. 2950.11(F)(1)(a) as part of its Crim.R. 11(C) plea colloquy. In reaching this decision, we find it significant that the plea form read and signed by Hagan specifically stated that upon his conviction he would be designated a Tier III sex offender "requiring in-person verification every 90 days for life *among other restrictions* including a prohibition from living within 1000 feet of a school." (Emphasis added.)

{¶ 32} We also find significant the fact that the trial court specifically addressed

Hagan at the plea hearing and stated:

> THE COURT: The Court understands that you are entering a guilty plea to Count III. That is sexual battery, a felony of the third degree. Please understand that as a result of this plea this Court could sentence you to 60 months in prison and impose a fine in the amount of $10,000.
>
> Also you will be designated a tier 3 sex offender and that will require that you register in person for verification every 90 days for the rest of your life. *There will be other restrictions* which will include a prohibition from moving with a thousand feet of a school. Do you understand that?
>
> THE DEFENDANT: Yes.

(Emphasis added.)

{¶ 33} Further into the proceedings, the trial court again addressed Hagan and stated:

> THE COURT: Do you have any questions about anything that we discussed?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you have any questions about anything that we have not discussed?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you have any questions about anything that's on this plea form that you told me you signed?
>
> THE DEFENDANT: No.

{¶ 34} When reviewing the totality of the circumstances surrounding Hagan's guilty plea, including the plea form read and signed by Hagan, we find the record supports the trial court's finding Hagan subjectively understood the effects of his guilty plea. This includes the fact that Hagan would be subject to certain requirements and restrictions as a Tier III sex offender. *See Butcher*, 2013-Ohio-3081 at ¶ 13 ("the totality of the circumstances indicate that Butcher subjectively understood that by pleading guilty to rape,

he would be subjected to certain restrictions as a Tier III sex offender"); *see also Reeder*, 2014-Ohio-2233 at ¶ 16-19 (upholding appellant's plea upon finding "the totality of the circumstances indicates appellant subjectively understood that by pleading guilty to rape, he would be subjected to certain restrictions as a Tier III sex offender").

{¶ 35} Due to the generous plea agreement offered by the state, there is also nothing in the record to indicate Hagan would not have pled guilty had the trial court explicitly advised him of the community notification requirement. Therefore, in light of our holdings in *Butcher*, *Henson*, and the Second District's holding in *Mayes*, we find that the statements made by the trial court with regard to the various requirements and restrictions Hagan faced as a Tier III sex offender under R.C. Chapter 2950 were such that the trial court substantially complied with the nonconstitutional provisions of Crim.R.11(C)(2)(a). Accordingly, finding no merit to the arguments raised herein, Hagan's first assignment of error lacks merit and is overruled.

{¶ 36} Affirming Hagan's guilty plea in this matter, we would be remiss not to address several issues we discovered in researching the law applicable to this case. In *Henson* this court stated at ¶ 13:

> We have previously found that the registration and notification requirements set forth in R.C. Chapter 2950 are part of the penalty imposed upon a defendant, and that "Crim.R. 11 obligates a trial court to advise a defendant of the *basic requirements* under R.C. Chapter 2950 before accepting a guilty plea."

(Emphasis added.)

{¶ 37} This court quoted this same passage in our subsequent decision in *State v. Swinson*, 12th Dist. Clermont No. CA2016-05-024, 2017-Ohio-150. Specifically, this court in *Swinson* stated at ¶ 16:

> This court has previously found that "the registration and notification requirements set forth in R.C. Chapter 2950 are part

- 13 -

of the penalty imposed upon a defendant, and that 'Crim.R. 11 obligates a trial court to advise a defendant of the *basic requirements* under R.C. Chapter 2950 before accepting a guilty plea.'"

(Emphasis added.)

{¶ 38} This court in *Henson* (and by extension *Swinson*) extrapolated this statement of law by quoting from this court's prior decision in *Butcher*. The quote in *Henson*, however, excluded the word "registration" from the phrase "basic registration requirements" as originally pronounced in *Butcher*. Specifically, as this court stated in *Butcher* at ¶ 11:

> As the requirements under R.C. Chapter 2950 are now part of penalty for the offense, we find that Crim.R. 11 obligates a trial court to advise a defendant of the *basic registration requirements* under R.C. Chapter 2950 before accepting a guilty plea.

(Emphasis added.)

{¶ 39} These misstatements in *Henson* and *Swinson*, by misquoting our prior decision in *Butcher*, implies that there is a distinction between the registration and community notification requirements to that of the verification requirement and residential restrictions as it relates to a Crim.R. 11(C) plea colloquy. But, when reviewing our decision in *Butcher*, we do not believe that this was the intent behind this court's holding. This becomes clear when considering the final sentence of ¶ 11 in *Butcher*, a sentence that both *Henson* and *Swinson* also cited as authority, wherein this court held "a trial court is not required to review each of the numerous individual *restrictions and requirements* set forth in R.C. Chapter 2950 to substantially comply with Crim.R. 11." (Emphasis added.)

{¶ 40} When taken in context, we find that our initial use of the phrase "basic registration requirements" in *Butcher* was referring to that requirement as it related to the specific facts of that case and the arguments raised therein. Our holding in *Butcher*, however, should not be so limited. This becomes apparent based on the plain language

found in the final sentence of ¶ 11 in *Butcher*, which, as noted above, refers generally to "the numerous individual *restrictions and requirements* set forth in R.C. 2950[.]" (Emphasis added.) These restrictions and requirements include registration, verification, and community notification requirements, as well as residential restrictions.

{¶ 41} We also find it necessary to note our decision in *State v. Johnson*, 12th Dist. Butler No. CA2015-02-016, 2015-Ohio-4650. In that case, appellant pled guilty to rape and was classified as a Tier III sex offender. On appeal, appellant argued his guilty plea was not knowingly, intelligently, and voluntarily entered. *Id.* at ¶ 18. In support, appellant argued his plea should be vacated since the trial court misstated the repercussions of his Tier III sex offender classification by notifying him as part of its Crim.R. 11(C) plea colloquy that the community notification requirement was a mere possibility rather than a mandatory aspect of his sex offender classification. *Id.* at ¶ 20. This court overruled appellant's argument upon finding the totality of the circumstances surrounding appellant's plea indicated appellant "subjectively understood the effects of his plea, including the notification requirement associated with his rape conviction and Tier III classification." *Id.* ¶ 23.

{¶ 42} Of significance to this case, however, was this court's statement that "[t]he trial court's colloquy should have informed [appellant] that community notification was a mandatory aspect of his Tier III classification." *Id.* at ¶ 20. At first glance, this court's pronouncement could certainly be read to mean a trial court is required to explicitly notify a defendant, as a Tier III sex offender, that he or she would be subject to a community notification requirement as part of its Crim.R. 11(C) plea colloquy. But, when read in context, it becomes clear that this court was merely commenting on the fact that the trial court mistakenly informed appellant that he "could" be subject to the community notification requirement rather than that he "would" be subject to that requirement. This court stated as much when noting later on in the opinion that "the trial court should have used the word

'must' instead of 'could.'" *Id.* at ¶ 21. This, as our decision in *Johnson* noted, is different than "a case where the trial court incorrectly stated that [appellant] would not be subject to notification," a scenario this court previously addressed in *Henson*.

{¶ 43} Our interpretation of *Johnson* becomes even more apparent when considering that decision has not been cited as authority by this court or any other court for the proposition that a trial court must explicitly advise a defendant, as a Tier III sex offender, that he or she would be subject to a community notification requirement as part of its Crim.R. 11(C) plea colloquy. This includes the Sixth District Court of Appeals decision in *Ragusa* and its progeny. Of further significance is the fact that our decision in *Johnson* did not cite to either of this court's prior decisions in *Butcher* or *Henson* as authority. This court's decision in *Johnson* is therefore limited to its facts and, as noted below, should not be read as an expansion of our prior holdings in *Butcher* or *Henson*.

{¶ 44} Due to the confusion that may arise between *Butcher, Henson*, *Swinson*, and *Johnson*, we find it necessary to reiterate and explicitly hold that "a trial court is not required to review each of the numerous individual *restrictions and requirements* set forth in R.C. Chapter 2950 to substantially comply with Crim.R. 11." (Emphasis added.) *See, e.g., Butcher* at ¶ 11-13; *see also Henson* at ¶ 13; *Swinson* at ¶ 16. Therefore, as discussed more fully above, because the trial court substantially complied with Crim.R. 11(C)(2)(a) by notifying Hagan he would be subject to, among others, a registration requirement and residential restrictions as a Tier III sex offender, the totality of the circumstances indicate Hagan's guilty plea was knowingly, intelligently, and voluntarily entered. This is true despite the fact the trial court failed to explicitly advise Hagan, as a Tier III sex offender, that he would be subject to a mandatory community notification requirement as provided for by R.C. 2950.11(F)(1)(a) as part of its Crim.R. 11(C) plea colloquy.

{¶ 45} Assignment of Error No. 2:

- 16 -

{¶ 46} THE TRIAL COURT ERRED IN IMPOSING A PRISON TERM WHERE THE FINDING THAT APPELLANT HELD A POSITION OF TRUST IN RELATION TO THE VICTIM WAS CONTRARY TO LAW AND UNSUPPORTED BY THE RECORD.

{¶ 47} In his second assignment of error, Hagan argues the trial court erred by sentencing him to serve 42 months in prison upon finding he held a position of trust in relation to his 14-year-old victim as provided by R.C. 2929.12(B)(3). We disagree.

**Standard of Review: Felony Sentencing**

{¶ 48} As with all felony sentences, we review the trial court's sentencing decision under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. This court may therefore "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

**Analysis**

{¶ 49} Hagan challenges the following statement made by the trial court at the sentencing hearing:

The Court notes within the specifics to the facts of this case, that

the Defendant did hold a special – had a relationship of trust with the victim in this case. The victim perceived him to be a father figure and he likewise perceived to be her (sic) a daughter-like figure. And the Court finds he used that position of trust in facilitating this offense.

**{¶ 50}** Based on this statement, Hagan argues the trial court mistakenly found that he had used a "position of trust" in facilitating the offenses as provided by R.C. 2929.12(B)(3). Pursuant to that statute:

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> * * *
>
> (3) The offender held a public office or position of trust in the community, and the offenses related to that office or position.

As noted by the Ohio Supreme Court, "[b]y including the phrase 'position of trust in the community,' the legislature reveals its intent that R.C. 2929.12(B)(3) apply only to public officials and other community leaders." *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 20.

**{¶ 51}** There is no dispute that Hagan is neither a public official nor a community leader. There is also no dispute the sexual battery offense Hagan pled guilty to was in no way related to any office or position held by Hagan. Hagan is therefore correct in his assertion that R.C. 2929.12(B)(3) does not apply to this case. The trial court, however, never cited to or referenced that statute when issuing its sentencing decision. Hagan merely presumes that the trial court was applying R.C. 2929.12(B)(3) to the case at bar when it found "[Hagan] used that position of trust in facilitating this offense." We find no merit to Hagan's claim.

**{¶ 52}** When taken in context, it is clear that the trial court was referring generally to Hagan's relationship with the victim, a permissible factor under R.C. 2929.12(B)(6), rather

than any "position of trust" as that phrase is used in R.C. 2929.12(B)(3). Pursuant to R.C. 2929.12(B)(6):

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> * * *
>
> (6) The offender's relationship with the victim facilitated the offense.

{¶ 53} That is exactly what the trial court did here by finding "[Hagan] did hold a special – had a relationship of trust with the victim in this case." The trial court's subsequent statement finding "[Hagan] used that position of trust in facilitating this offense," rather than referring back to its previous finding that "[Hagan] did hold a special – had a relationship of trust with the victim in this case," was nothing more than a slip of the tongue that in no way impacts the trial court's sentencing decision. This is certainly the case here when considering the trial court in the immediately preceding sentence found "[t]he victim perceived [Hagan] to be a father figure and he likewise perceived to be her (sic) a daughter-like figure."

{¶ 54} Although somewhat factually distinguishable, we find this case is nevertheless analogous to the Seventh District Court of Appeals' decision in *State v. Gant*, 7th Dist. Mahoning No. 04 MA 252, 2006-Ohio-1469. As the Seventh District stated in that case when addressing a substantially similar argument raised by Hagan herein:

> Appellant argues that the trial court mistakenly found that Appellant had abused a position of trust. Appellant presumes that the trial court misread R.C. § 2929.12(B)(3), which states: "The offender held a public office or position of trust in the community, and the offense related to that office or position." The trial court, though, was referring generally to a relationship based on trust between Appellant and the victim. This is more related to the factor listed in R.C. § 2929.12(B)(6): "The offender's relationship with the victim facilitated the offense."

> Based on this sentencing factor, rather than the one Appellant has referred to, the trial court did not err in considering the personal relationship between the defendant and the victim.

*Id.* at ¶ 61.

{¶ 55} In light of the foregoing, including the Seventh District's decision in *Gant*, we find no merit to Hagan's claim the trial court erred by sentencing Hagan to 42 months in prison upon finding that he held a position of trust in relation to the victim pursuant to R.C. 2929.12(B)(3).

{¶ 56} Regardless, even if we did find merit to Hagan's claim, any such error would be harmless given the significant other factors supporting the trial court's sentencing decision. This includes, but is not limited to, the serious nature of the offense and the young age of the victim. This also includes the fact that Hagan had previously served time in prison after he was convicted of trafficking in heroin, as well as the fact Hagan violated his postrelease control shortly after he was released from prison on that charge. These factors, standing alone, justify the trial court's decision to sentence Hagan to serve 42 months in prison.

{¶ 57} In reaching this decision, we note that the trial court had the option of sentencing Hagan to a maximum 60-month prison term – 18 months more than the sentence the trial court actually imposed in this case. *See* R.C. 2929.14(A)(3)(a) (third-degree felony sexual battery carries a prison term of "twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months"). The trial court properly exercised its discretion in sentencing Hagan to a sentence that was less than the maximum sentence allowable for a third-degree felony sexual battery offense. Therefore, finding no merit to the arguments raised herein, Hagan's second assignment of error lacks merit and is overruled.

{¶ 58} Judgment affirmed.

RINGLAND, P.J., concurs.

M. POWELL, J., dissents.


**M. POWELL, J., dissenting.**

{¶ 59} In R.C. Chapter 2950, the General Assembly enacted a sex offender registration and notification ("SORN") scheme. A person convicted of a sexually oriented offense requiring a Tier III sex offender classification is subject to three separate and distinct basic SORN requirements: address registration and verification (the "registration requirement;" R.C. 2950.04 and 2950.06), residential restrictions (R.C. 2950.034), and community notification (R.C. 2950.11). The registration, community notification and residential restriction requirements shall hereinafter be referred to collectively as the basic SORN requirements.

{¶ 60} In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, the Ohio Supreme Court ruled that R.C. Chapter 2950 is punitive. Crim. R. 11(C)(2)(a) provides that a trial court personally address the defendant in a plea colloquy and insure that a plea of guilty or no contest is made "with an understanding * * * of the maximum penalty involved." The sole issue presented by this appeal is whether Crim. R. 11(C)(2)(a) mandates a trial court's plea colloquy to include advice that a Tier III sex offender classification will subject the defendant to community notification. Because community notification is a significant aspect of the punitive scheme established by R.C. Chapter 2950, it must be included in the plea colloquy for a sexually oriented offense as part of the maximum penalty. Furthermore, omission from the plea colloquy of advice concerning the community notification requirement is a complete failure to comply with Crim. R. 11(C) and does not implicate an analysis of whether Hagan was prejudiced by the omission.

{¶ 61} Since *Williams*, Ohio courts have routinely included in the plea colloquy

advice as to the SORN consequences of entering a guilty or no contest plea to a sexually oriented offense. While there is broad agreement on this general practice, appellate districts have differed as to the necessary detail trial courts must provide for substantial compliance with Crim. R. 11(C).

{¶ 62} In *State v. Creed*, 8th Dist. Cuyahoga No. 97317, 2012-Ohio-2627, the Eighth Appellate District considered a trial court's plea colloquy that included advice as to the registration and community notification requirements but omitted mention of the residential restriction. The appellate court held that advice as to each of the three basic SORN requirements of Tier III sex offender classification was unnecessary because, under the totality of the circumstances, Creed "subjectively understood that * * * he would be subjected to certain restrictions as a Tier III sex offender." *Id.* at ¶ 17.

{¶ 63} The Second Appellate District has also ruled that advice as to some, but not all, of the basic requirements of Tier III sex offender classification is partial compliance with Crim. R. 11 and does not invalidate a plea absent a demonstration of prejudice. *See State v. Mayes*, 2d Dist. Montgomery No. 27194, 2017-Ohio-9313 (where the trial court advised the defendant of the registration requirement but not the community notification requirement); *but see State v. Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572 (failure to advise that a Tier III sex offender classification involves community notification does not satisfy substantial compliance with Crim. R. 11).

{¶ 64} The Sixth Appellate District, in a series of cases, has approached the issue differently and held that failure to include advice as to all three basic SORN requirements in the plea colloquy is a complete failure to comply with Crim. R. 11(C):

> Because the requirements imposed upon a defendant classified as a child victim or sex offender pursuant to R.C. Chapter 2950 [which includes registration, community notifications, and residential restrictions] are now considered punitive sanctions, the trial court must inform the defendant of all of the punitive

consequences of entering a guilty plea and having a child victim or sex offender classification in order to substantially comply with non-constitutional provisions of Crim.R. 11. The trial court is not required to address each specific restriction or requirement, but it must substantially notify the defendant of the restriction and registration requirements.

(Citations omitted.) *State v. Ragusa*, 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373, ¶ 5. *See also State v. Kouts*, 6th Dist. Sandusky No. S-16-012, 2017-Ohio-2905 (finding that when a guilty plea results in a defendant being classified as a child victim offender or sex offender under R.C. Chapter 2950, substantial compliance requires the trial court to inform the defendant of all three basic SORN requirements, to wit, the registration requirements in R.C. 2950.03, the community notification requirements in R.C. 2950.11, and the residential restrictions in R.C. 2950.034 during the sexually oriented offense plea colloquy).

**{¶ 65}** The First Appellate District has also held that the "registration, community-notification, and verification requirements of the Adam Walsh Act * * * are punitive in nature [and] a defendant must be informed of them before his plea of guilty may be accepted." *State v. Jackson*, 1st Dist. Hamilton No. C-110645, 2012-Ohio-3348, ¶ 6.

**{¶ 66}** This court has addressed the intersection of Crim. R. 11(C) and R.C. Chapter 2950 in various iterations. Our cases have concerned the necessary specificity of advice regarding the registration requirement and the import of misadvice regarding the community notification requirement. However, this is the first time that we have been called upon to specifically address the issue of whether Crim.R. 11(C) obligates a trial court to include advice concerning the community notification requirement in its plea colloquy for a sexually oriented offense.

**{¶ 67}** Our seminal case on the issue is *State v. Butcher*, 12th Dist. Butler No. CA2012-10-206, 2013-Ohio-3081, where we considered the validity of a guilty plea based upon claimed deficiencies in the plea colloquy relating to the registration requirement.

Citing *Hawkins, Creed, and Jackson*, we held that "as the requirements under R.C. Chapter 2950 are now part of the penalty for the offense, we find that Crim.R. 11 obligates a trial court to advise a defendant of the basic registration requirements under R.C. Chapter 2950 before accepting a guilty plea." *Butcher* at ¶ 11. We continued by explaining that Crim.R. 11 did not require a trial court's plea colloquy to include "each of the numerous individual restrictions and requirements set forth in R.C. Chapter 2950." *Id.* We then found that the trial court substantially complied with Crim.R. 11 because "the totality of the circumstances indicate that Butcher subjectively understood that by pleading guilty to rape, he would be subjected to certain restrictions as a Tier III sex offender." *Id.* at ¶ 13.

{¶ 68} *Butcher'* s holding that "Crim.R. 11 obligates a trial court to advise a defendant of the basic registration requirements under R.C. Chapter 2950" is indisputably a correct statement of the law. However, *Butcher* did not involve a challenge based upon any aspect of the maximum penalty involved except the registration requirement. Thus, *Butcher* did not address a trial court's responsibility regarding the other basic SORN requirements. *Butcher* simply holds that general advice that a classified sex offender would be subject to the registration requirement substantially complies with the Crim.R. 11 obligation to advise about that requirement, without the necessity of detailing the manner of compliance.

{¶ 69} Since *Butcher*, we have considered the requisites of compliance with Crim.R. 11 in a sexually oriented offense plea colloquy in *State v. Reeder*, 12th Dist. Butler Nos. CA2013-05-075 and CA2013-07-126, 2014-Ohio-2233; *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994; *State v. Johnson*, 12th Dist. Butler No. CA2015-02-016, 2015-Ohio-4650; and *State v. Swinson*, 12th Dist. Clermont No. CA2016-05-024, 2017-Ohio-150. The majority's interpretation of the collective import of these opinions is that advice about the community notification requirement need not be included in a sexually oriented offense plea colloquy. I disagree. I find that our collective opinions are ambiguous

and subject to contradictory interpretations.[1]  However, regardless of how our cases may be understood, Crim.R. 11 ought to be construed as requiring a sexually oriented offense plea colloquy to include advice about all applicable basic SORN requirements.

{¶ 70} It is indisputable that all basic SORN requirements are part of the maximum penalty referred to in Crim.R. 11(C)(2)(a) for a sexually oriented offense involving a Tier III sex offender classification.  We said as much in *Butcher* ("the requirements under R.C. Chapter 2950 are now part of the penalty for the offense").  *Butcher*, 2013-Ohio-3081 at ¶ 11; see also *Creed*, 2012-Ohio-2627 at ¶ 16; *Hawkins*, 2013-Ohio-2572 at ¶ 10-11; and *Ragusa*, 2016-Ohio-3373 at ¶ 10.  When the Ohio Supreme Court first recognized that the amendments to R.C. Chapter 2950 were punitive, it did so for all three basic SORN requirements.  *Williams*, 2011-Ohio-3374 at ¶ 14-15.  Referencing the punitive effect of the various amendments to R.C. Chapter 2950, the supreme court noted that "[n]o one change compels our conclusion that S.B. 10 is punitive."  *Id*. at ¶ 21.  As all the basic SORN requirements are part of the maximum penalty for a sexually oriented offense, there is no justification consistent with the mandate of Crim.R. 11(C)(2)(a) that a defendant not be advised in a plea colloquy of all three basic SORN requirements.

{¶ 71} A trial court must substantially comply with Crim.R. 11 in advising a defendant concerning the nonconstitutional provisions of the rule, including the maximum penalty involved for the offense.  "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."  *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).  The basic SORN

---

1. That our cases provide no succinct resolution of the issue is apparent from the majority's involved dissection of our cases, including its analysis of why the language in *Henson* and *Swinson* that "the registration and notification requirements set forth in R.C. Chapter 2950 are part of the penalty imposed upon a defendant, and that Crim.R. 11 obligates a trial court to advise a defendant of the basic requirements under R.C. Chapter 2950 before accepting a guilty plea," does not mean what it says.

requirements are separate and distinct. For instance, the registration requirement includes the obligation for a sex offender to register the addresses where he lives, works, and attends school and to periodically verify those addresses for a certain duration of time. The community notification requirement includes notification of certain members of the community about a sex offender's name and address. The residential restriction prohibits a sex offender from residing within a certain distance of particular institutions frequented by children. Advice about any one of the basic SORN requirements does not suggest that the offender is subject to the others. Likewise, advice about any one of the basic SORN requirements implies nothing about the burdens and responsibilities associated with the others. Substantial compliance with the Crim.R. 11 obligation to advise about a basic SORN requirement does not substantially comply with advising about the other SORN requirements because it does not inform the defendant about the implications of his plea regarding the basic SORN requirements of which he is not advised.

{¶ 72} The cases that have found that advice about fewer than all the basic SORN requirements does not invalidate a plea have not applied the substantial compliance standard recognized by the supreme court in *Nero*. Instead of reviewing whether a defendant "subjectively understands the implications of his plea," these cases review whether a defendant subjectively understands that by pleading he would be subjected to certain restrictions as a sex offender. *See Butcher*, 2013-Ohio-3081 at ¶ 13. This latter standard fails to treat all the basic SORN requirements as part of the maximum penalty as it permits omission of some of those requirements from the plea colloquy. *See State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22 (finding a complete failure of compliance with Crim.R. 11[C], "because the trial court failed, before it accepted the guilty plea, to inform the defendant of the mandatory term of postrelease control, which was part of the maximum penalty").

{¶ 73} This standard also dilutes the *Nero* substantial compliance standard because it engages in the fiction of assuming information about any of the basic SORN requirements suggests to the defendant that he is subject to the other distinct and undisclosed restrictions. A defendant cannot subjectively understand the implications of his plea if he is not provided any information concerning a particular implication. *Id.* ¶ 23 (concluding that no reasonable person in Sarkozy's position would have been put on notice of [the postrelease control] restraint on his liberty, because the trial court failed to inform him of the consequences of his plea).

{¶ 74} The community notification requirement, with which this case is concerned, is significantly punitive and merits inclusion in a plea colloquy for a sexually oriented offense involving a Tier III sex offender classification. The community notification requirement obligates the county sheriff to provide a Tier III sex offender's name, residence, school and employment addresses, photograph, and offense of conviction to persons living within 1,000 feet of the sex offender, all persons sharing a common hallway with the sex offender in a multi-unit building, the building manager of a multi-unit building, and local school superintendents, school principals, and police chiefs. The sheriff must also post a flyer with the sex offender's name, address, photograph, and offense of conviction in each common entryway of a multi-unit building in which the sex offender resides. As the Ohio Supreme Court observed, "[t]he stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment." *Williams*, 2011-Ohio-3374 at ¶ 15. Community notification gives a name, face, and address to that stigma. The punitive burdens associated with the community notification require a plea colloquy to include advice concerning that requirement.

{¶ 75} I agree with our holding in *Butcher* that substantial compliance with Crim.R. 11 does not require a plea colloquy to include "each of the numerous individual restrictions

and requirements set forth in R.C. Chapter 2950," in that each of the basic SORN requirements is subject to numerous other requirements. *Butcher*, 2013-Ohio-3081 at ¶ 11. For instance, compliance with the registration requirement requires an offender to register within a certain number of days after establishing residency, register multiple addresses, give notice of change of addresses a certain number of days prior to the effective date of the change, and verify addresses at periodic intervals for a particular duration of time depending upon the offender's sex offender classification. The community notification requirement requires that certain neighbors of the offender and public officials be given notice of the offender's name, address, and offense of conviction and be provided with a photograph of the offender. The residential restriction prohibits the offender from residing with 1,000 feet of various institutions frequented by children. So long as the plea colloquy includes advice as to all applicable basic SORN requirements, these other "numerous individual restrictions and requirements" of R.C. Chapter 2950 need not be included to satisfy substantial compliance with Crim.R. 11.

{¶ 76} A plea colloquy for a sexually oriented offense involving a Tier III sex offender classification must include advice that the defendant will be subject to address registration and periodic verification, that certain persons in the community will be notified of the defendant's sex offender classification, that the defendant will be subject to restrictions on where he may reside, and that failure to comply with certain of these duties may result in the filing of additional criminal charges. If, after such advice, a defendant requires more detail, he may so advise the trial court and such additional detail may be provided. However, at a minimum, substantial compliance with Crim.R. 11(C)(2)(a) mandates that the defendant be informed of the basic requirements inherent in being classified as a sex offender.

{¶ 77} As the Sixth Appellate District held in *Ragusa*, "Each of the penalty

notifications of R.C. Chapter 2950 must be viewed independently. The court in this case informed appellant of one of the penalties, but not all three. Therefore, we must find that there was a complete failure to comply with the notification duties and the plea is invalid." *Ragusa*, 2016-Ohio-3373 at ¶ 10. Thus, a demonstration of prejudice is unnecessary. *Sarkozy*, 2008-Ohio-509 at ¶ 22 ("A complete failure to comply with [Crim.R. 11] does not implicate an analysis of prejudice").

**{¶ 78}** I would therefore reverse the trial court's decision, vacate appellant's guilty plea, and remand to the trial court for further proceedings.

**{¶ 79}** With regard and respect for my colleagues in the majority, I dissent.